UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| BENJAMIN PANONCILLO, | CIV. NO. 23-00120 LEK-WRP |
| Plaintiff, | |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**ORDER: GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL; REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION; AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

Before the Court is Plaintiff Benjamin Panoncillo's ("Plaintiff") appeal from both Administrative Law Judge Jesse Pease's ("ALJ") July 28, 2021 Decision and the Appeals Council's denial of Plaintiff's request for review of the ALJ's Decision ("Appeal").[1]  Plaintiff's Opening Brief was filed on June 5, 2023.  [Dkt. no. 10.]  Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("the Commissioner") filed the Answering Brief on July 3, 2023, and Plaintiff filed his Reply

---

[1] The Decision, including the Notice of Decision – Unfavorable and the List of Exhibits, is available in the Administrative Record Dated March 24, 2023 ("AR") at 17-35. [AR, filed 5/3/23 (dkt. no. 5), Documents Related to Administrative Process Including Transcript of Oral Hearing, if applicable (dkt. no. 5-3) at PageID.33-51.]  The Appeals Council denied Plaintiff's request for review on January 3, 2023. [Notice of Appeals Council Action ("AC Notice"), AR at 1-6 (dkt. no. 5-3 at PageID.17-22).]

Brief on July 12, 2023.  [Dkt. nos. 13, 14.]  Oral argument on the Appeal was heard on September 8, 2023.  For the reasons set forth below, Plaintiff's Appeal is granted in part and denied in part.  The Appeal is granted, insofar as the ALJ's Decision is reversed as to the ALJ's rejection of Plaintiff's subjective testimony about the amount of weight he is able to lift and carry.  The Appeal is denied as to Plaintiff's argument regarding the ALJ's consideration of the medical opinions about Plaintiff's ability to lift and carry.  In light of the ruling regarding the consideration of Plaintiff's testimony, it is not necessary for this Court to address the other arguments presented in the Appeal.  The matter is remanded to the ALJ for further proceedings consistent with this Order.

<u>**BACKGROUND**</u>

On January 10, 2020, Plaintiff protectively filed a Title II application for disability and disability insurance benefits, alleging he was disabled as of February 27, 2019. Plaintiff's claim was denied, initially and on reconsideration. On October 15, 2020, Plaintiff filed a written request for a hearing.  At the July 15, 2021 hearing before the ALJ, Plaintiff was represented by Damian Holzmeister, Esq., and Plaintiff and Sugi Komarov, an impartial vocational expert ("VE"), testified. [Decision, AR at 20 (dkt. no. 5-3 at PageID.36).]

Plaintiff testified that the last time he held a full-time job was in 2017 or 2018, when he worked as a cleaner/janitor.  According to Plaintiff, his employer let him go when the employer found out about his condition.  Beginning in the second half of 2019, Plaintiff worked fifteen hours per week at City Mill.  Until he was laid off in May 2021, Plaintiff was working as janitor, but the job was on-call, and less than ten hours per week.  [Social Security Administration Office of Disability Adjudication and Review Transcript of 7/15/21 hearing ("Hrg. Trans."), AR at 42-44 (dkt. no. 5-3 at PageID.58-60).]  However, Plaintiff did not earn enough money at any of those maintenance positions for the position to constitute past relevant work.  [Id. at 47 (dkt. no. 5-3 at PageID.63).]

Plaintiff previously worked for Ekahi, a fire protection company, as a pipe fitter and welder.  He started that job in 1988 when the company was called Alstom.  [Id. at 45 (dkt. no. 5-3 at PageID.61).]  Plaintiff stated he "was in fit condition at that time," and the job required him to lift more than fifty pounds.  [Id.]  That was the only job that the ALJ found to be past relevant work.  [Id. at 47 (dkt. no. 5-3 at PageID.63).]

Plaintiff testified that he is unable to work because the two medications he takes for his epilepsy – Lamotrigine and a form of carbamazepine - are causing deterioration of the

3

cartilage in his joints, causing pain and impairing his balance.[2]
[Id. at 48, 52 (dkt. no. 5-3 at PageID.64, PageID.68).]
Specifically, pain in his hip and his ankle make it difficult
for him to walk.  [Id. at 52 (dkt. no. 5-3 at PageID.68).]
According to Plaintiff, the maintenance jobs that he worked
required a lot of walking, and he walked and worked too slowly
because of the pain.  Plaintiff's boss said that the job
required someone who would work a little faster.  [Id. at 49
(dkt. no. 5-3 at PageID.65).]

Plaintiff also testified that he was still
experiencing seizures with blackouts, with the most recent one
occurring the weekend before the hearing.  According to
Plaintiff, he usually experiences seizures twice a week.  At the
time of the hearing, Plaintiff was taking medication to manage
the seizures, and he testified that his doctor had increased the
dosage.  [Id. at 49-50 (dkt. no. 5-3 at PageID.65-66).]
Plaintiff testified that a seizure would last approximately five
seconds, and then he would black out.  It would take him
approximately five minutes for him to recover and to remember

---

[2] Plaintiff described the medication as causing arthritis,
[Hrg. Trans., AR at 48 (dkt. no. 5-3 at PageID.64),] but the ALJ
noted that what Plaintiff appeared to be experiencing was
osteopenia, weaking of the bones, caused by his medication, [id.
at 55 (dkt. no. 5-3 at PageID.71)].

where he was and what he was doing.  [Id. at 50 (dkt. no. 5-3 at PageID.66).]

Plaintiff also has vertigo that he experiences while he is sleeping and causes him to wake up regularly in the middle of the night.  He takes medication for the vertigo.  Plaintiff described problems with kidney stones, which he said were caused by the vitamin C he was taking to improve his balance.  His doctor directed him to stop taking the vitamin C because of the kidney stones.  [Id. at 51 (dkt. no. 5-3 at PageID.67).]

Plaintiff testified that, while he was working, he would walk for approximately thirty minutes or an hour, then he would start walking slowly and would need to rest for up to five minutes before he could start walking again.  [Id. at 52-53 (dkt. no. 5-3 at PageID.68-69).]  As to his ability to lift and carry, Plaintiff testified that, when he has tried to exercise, he has difficulty picking up one twenty-pound dumbbell.  [Id. at 53 (dkt. no. 5-3 at PageID.69).]

On a typical day, Plaintiff takes care of his family's home while his wife goes to work.  He cleans the house, takes care of his son, and drives his son to and from school.  Other than taking his son to and from school, Plaintiff only drives when he needs to go to a doctor's appointment.  [Id. at 53-54 (dkt. no. 5-3 at PageID.69-70).]  Plaintiff testified that he has a valid driver's license, but he acknowledged that Hawai`i

requires someone to be seizure-free for a period of time before he can drive.  Plaintiff's doctor has never mentioned anything to him about not driving, but Plaintiff tries not to drive, for the sake of everyone's safety.  [Id. at 54-55 (dkt. no. 5-3 at PageID.70-71).]

The VE testified that there were three occupations, which existed in significant numbers in the national economy, that a hypothetical person with the limitations that the ALJ ultimately included in Plaintiff's residual functional capacity ("RFC") could perform.  See id. at 57-61 (dkt. no. 5-3 at PageID.73-77).

In the Decision, the ALJ found that Plaintiff was insured, for purposes of the Social Security Act, through September 30, 2024.  [Decision, AR at 23 (dkt. no. 5-3 at PageID.39).]  At step one of the five-step sequential analysis to determine whether a claimant is disabled, the ALJ found that Plaintiff had not engaged in substantial gainful employment since February 27, 2019.  [Id.]

At step two, the ALJ found that Plaintiff's seizure disorder with vertigo and obesity constituted severe impairments.  [Id. (citing 20 CFR 404.1520(c) and 416.920(c)).]  The ALJ also noted Plaintiff had a number of other impairments, including, inter alia, kidney stones, exotropia in his right eye, hypertension, chronic kidney disease, osteopenia,

6

hyperlipidemia, sleep apnea, mild degeneration in his hip
joints, and bursitis.  [Id. at 23-24 (dkt. no. 5-3 at PageID.39-
40).]  The ALJ found that these were not severe because "they
were treated with routine medication or lifestyle modification
recommendations, the impairments did not last, or are not
expected to last, for a continuous period of at least 12 months,
and/or there is no indication of more than minimal limitations
on the claimant's ability to perform basic work activities."
[Id. at 24 (dkt. no. 5-3 at PageID.40).]

       At step three, the ALJ found that none of Plaintiff's
impairments, either individually or in combination, met or
equaled one of the impairments listed in 20 C.F.R. Part 404,
Subpart P, Appendix 1.  [Id. (citing 20 CFR 404.1520(d),
404.1525, 404.1526, 416.920(d), 416.925, 416.926).]

       In the step four analysis, the ALJ found that
Plaintiff had the RFC

              to perform medium work as defined in 20 CFR
              404.1567(c) and 416.967(c), except: frequent
              postural activities; frequent stairs and ramps;
              seizure precautions to include no hazardous
              machinery; no unprotected heights; no ladders,
              ropes, or scaffolds; no driving; no climbing
              (other than a few stairs like in front of a
              building); and no large bodies of water.

[Id. at 25 (dkt. no. 5-3 at PageID.41).]  The ALJ found that
Plaintiff's impairments could reasonably be expected to cause
the symptoms that Plaintiff described, but the totality of the

evidence was not consistent with Plaintiff's statements nor with his hearing testimony about the intensity, persistence, and limiting effects of his symptoms.  [Id. at 26 (dkt. no. 5-3 at PageID.42).]

The ALJ pointed out that, on June 25, 2021, neurologist Stuart W.H. Pang, M.D., noted Plaintiff's epilepsy diagnosis.  [Id. at 27 (dkt. no. 5-3 at PageID.43) (citing Exh. 8F).[3]]  However, the ALJ stated there was no evidence in the medical record regarding Plaintiff's "reported intensity and persistence of seizures."  [Id.]  The Pang Statement also notes that Plaintiff's "MRI brain shows extensive left posterior encephalmomalacia with volume loss" and that Plaintiff "has a lifelong learning disorder."  [Exh. 8F (Pang Statement), AR at 497 (dkt. no. 5-8 at PageID.518).]  Dr. Pang opined that: in a typical workday, Plaintiff's symptoms would be severe enough to cause him to be off-task more than twenty-five percent of the time; Plaintiff would only be able to maintain attention and concentration for less than fifteen minutes at a time because of his symptoms and/or medication; Plaintiff was likely to be

---

[3] Exhibit 8F is a transmission of the Treating Source Statement - Physical Conditions by Dr. Pang, dated June 25, 2021 ("Pang Statement").  [AR at 495-500 (dkt. no. 5-8 at PageID.516-21).]  Dr. Pang states that he saw Plaintiff in August 2020, December 2020, and June 2021 for Plaintiff's epilepsy, which Dr. Pang noted that Plaintiff had since childhood.  [Id. at 497 (dkt. no. 5-8 at PageID.518).]

absent more than four days per month.  [Id.]  The ALJ ultimately
found these opinions to be unpersuasive because they were "not
well supported nor consistent with the longitudinal test
results, exam findings, and other opinion evidence[.]"
[Decision, AR at 24 (dkt. no. 5-3 at PageID.40).]

        The ALJ also noted Dr. Pang opined that Plaintiff had
the following exertional limitations:

        lift and carry 20 pounds rarely, and up to 10
        pounds occasionally; sit 8 hours total in an 8
        hour workday; stand and walk 2 hours total in an
        8 hour workday; use the arms and hands for
        reaching, handling, fingering, feeling, pushing,
        and pulling frequently; frequently use bilateral
        foot controls; occasionally climb stairs and
        ramps, balance, stoop, kneel, crouch, crawl, and
        rotate the head and neck; never climb ladders and
        scaffolds; never be exposed to unprotected
        heights, moving mechanical parts, operate a
        vehicle; rarely be exposed to extreme cold or
        heat; and occasionally be exposed to humidity and
        wetness and pulmonary irritants, and vibration.

[Id. at 28 (dkt. no. 5-3 at PageID.44) (citing Exh. 8F).]  The
ALJ found that the limitations that Plaintiff could not use
ladders, ropes, or scaffolds and that he could not drive were
consistent with his epilepsy condition.  [Id. (citing Exhs. 1F;
2F/6; 8F).[4]]  However, the ALJ found that the rest of Dr. Pang's

_____

        [4] Exhibit 1F is the Health Information Technology (HIT)
Medical Report from Queen's Medical Center ("Queen's") for the
period from March 19, 2018 to May 15, 2019 ("Queen's HIT
Report").  [AR at 386-401 (dkt. no. 5-8 at PageID.407-22).]
Exhibit 2F is the Health Information Technology (HIT) Medical
Report from Kaiser Permanente ("Kaiser") for the period from
                                        (. . . continued)

exertional opinions were "not persuasive since the limitations are not well supported by specific objective findings during the period at issue" and "Dr. Pang's limitations are not consistent with the test results and exam findings during the period[.]" [Id. (citation omitted).]

State agency consultants found that there was insufficient evidence to evaluate Plaintiff's claim. [Exh. 2A, AR at 136 (dkt. no. 5-4 at PageID.153); Exh. 4A, AR at 145 (dkt. no. 5-4 at PageID.162); Exh. 6A, AR at 153 (dkt. no. 5-4 at PageID.170); Exh. 8A, AR at 162 (dkt. no. 5-4 at PageID.172).[5]] Dr. Lau opined that "[t]he totality of evidence appears to suggest [Plaintiff] is cable of at least a 'light' RFC," but

---

January 23, 2019 to October 3, 2019 ("Kaiser HIT Report"). [AR at 402-19 (dkt. no. 5-8 at PageID.423-40).] Pages 5 and 6 of Exhibit 2F are the Progress Notes by Megan D. Hiles, M.D., for Plaintiff's February 11, 2019 visit. [AR at 406-07 (dkt. no. 5-8 at PageID.427-28)].

[5] Exhibit 2A is the Disability Determination Explanation for the DIB claim at the Initial level, signed by S. Lau, M.D., on March 17, 2020 and by Rui Wen Chong ("Chong") on March 19, 2020 ("DIB Initial DDE"). [AR at 130-37 (dkt. no. 5-4 at PageID.147-54).] Exhibit 4A is the Disability Determination Explanation for the DI claim at the Initial level, signed by Dr. Lau on March 17, 2020 and by Chong on March 19, 2020 ("DI Initial DDE"). [AR at 139-46 (dkt. no. 5-4 at PageID.156-63.] Exhibit 6A is the Disability Determination Explanation for the DIB claim at the Reconsideration level, signed by N. Shibuya, M.D., on September 15, 2020 and by C. Lind ("Lind") on September 16, 2020 ("DIB Reconsideration DDE"). [AR at 148-55 (dkt. no. 5-4 at PageID.165-72).] Exhibit 8A is the (Disability Determination Explanation for the DI claim at the Reconsideration level, signed by Dr. Shibuya on September 15, 2020 and by Lind on September 16, 2020 ("DI Reconsideration DDE"). [AR at 157-63 (dkt. no. 5-4 at PageID.174-80).]

Dr. Lau noted that, because of "the absence of current objective exams and lack of ADLs, 'I/E' appears to be a more accurate determination at this time."  Exh. 2A (DI Initial DDE), AR at 135 (dkt. no. 5-4 at PageID.152); see also Exh. 6A (DI Reconsideration DDE), AR at 152 (dkt. no. 5-4 at PageID.169) (Dr. Shibuya noted: "At RECON stated no treatment.  No response to ADL.  AOD 2-27-19 to current, Insuff Evid.").

The ALJ apparently rejected all of the opinions by the state agency consultants, including their RFC findings, because they found insufficient evidence of a severe impairment.  See Decision, AR at 28 (dkt. no. 5-3 at PageID.44) (citing Exhs. 2A, 4A, 6A, 8A).  The ALJ found that their findings of insufficient evidence were

> not well supported nor consistent with the test results, exam findings, and other opinion evidence, discussed in detail herein, including findings of epilepsy (1F; 2F/6; 8F); right hip hypertrophic changes of the pubic symphysis and mild degenerative changes at the hip joints (2F/11); right hip tenderness to palpation anteriorly over buttock and greater trochanter, right hip joint pain, and suspected bursitis from extensive walking (2F/2-3).

[Id.]  The ALJ found the opinions of neurologist Victoria S. Wong, M.D., to be persuasive in part, stating:

> Prior to the period at issue, on September 4, 2018, neurologist Victoria S. Wong, MD referenced a discussion on swimming, surfing, water sports, unprotected heights, power tools and other dangerous equipment, cooking, hot surface, oil,

11

> boiling water, and driving (e.g., 1F/6, 10).[6]
> The undersigned finds this opinion persuasive to
> the extent in accord with the seizure precautions
> herein; which are well supported, and consistent
> with the claimant's history of presumed perinatal
> cerebral injury based on the above MRI findings,
> left sided abnormalities on EMU admissions
> (1F/6), and history of epilepsy (1F; 2F/6; 8F).

[Id.]  The ALJ also relied on Dr. Wong's exam findings to

support his finding that Dr. Pang's opinions were not

persuasive.

> [T]he record shows normal mental status exam
> findings, namely, on September 4, 2018,
> neurologist Victoria S. Wong, MD referenced a
> remote May 1, 2012 brain MRI showing extensive
> left posterior hemispheric encephalomalacia with
> volume loss, but no acute intracranial
> abnormality, and no evidence of hippocampal
> sclerosis; and on exam, the claimant was alert
> and oriented with appropriate fund of knowledge
> for educational level (1F/6).  During the period,
> exam findings showed the claimant was
> neurologically grossly intact, with appropriate
> affect, and alert and oriented times three
> (2F/5).  The undersigned does not find Dr. Pang's
> opinion persuasive . . . .

[Id. at 24 (dkt. no. 5-3 at PageID.40).]

The ALJ found that, based on his RFC, Plaintiff was

incapable of returning to any of his past relevant work.  [Id.

at 29 (dkt. no. 5-3 at PageID.45).]

---

6 Page 6 of Exhibit 1F is part of the Progress Notes by
Dr. Wong for Plaintiff's September 4, 2018 visit.  [Exh. 1
(Queen's HIT Report) at 3-7, AR at 388-92 (dkt. no. 5-8 at
PageID.409-413).]  Page 10 of Exhibit 1F is part of a Progress
Note by Dr. Wong for Plaintiff's May 2, 2018 visit.  [Id. at 7-
10, AR at 392-95 (dkt. no. 5-8 at PageID.413-16).]

At step five, the ALJ noted that Plaintiff was in the "closely approaching advanced age" category the alleged disability onset date and, by the time of the Decision, Plaintiff was in the "advanced age" category. [Id. at 30 (dkt. no. 5-3 at PageID.46 (citing 20 CFR 404.1563, 416.963).] Further, Plaintiff has at least a high school education. [Id. (citing 20 CFR 404.1564, 416.964).]  The Decision does not address whether Plaintiff has transferable job skills because the ALJ found that, using the Medical-Vocational Rules framework, Plaintiff was "not disabled," irrespective of the transferable skills issue. [Id. (citing SSR 82-41; 20 CFR Part 404, Subpart P, Appendix 2).]  The ALJ found that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could make a successful adjustment to the following jobs that exist in significant number in the national economy: dining room attendant, transporter, and warehouse worker. [Id. at 30-31 (dkt. no. 5-3 at PageID.46-47).]  The ALJ therefore found that Plaintiff was not under a disability from the alleged onset date, February 27, 2019 to the date of the Decision. [Id. at 31 (dkt. no. 5-3 at PageID.47) (citing 20 CFR 404.1520(g), 416.920(g)).]

After requesting review of the ALJ's Decision, Plaintiff submitted: additional medical records from Queen's, dated September 4, 2018; medical records from Kaiser, from

13

February 8, 2019 to August 7, 2020; and a letter from Reid
Hoshide, M.D., dated November 10, 2022.  See AC Notice, AR at 2
(dkt. no. 5-3 at PageID.18); see also AR at 8-10 (dkt. no. 5-3
at PageID.24-26) (transmission from Plaintiff of Dr. Hoshide's
letter); AR at 63-96 (dkt. no. 5-3 at PageID.79-112) (Kaiser
records); AR at 97-128 (dkt. no. 5-3 at PageID.113-44) (Queen's
records).  The Appeals Council found that the Queen's records
and the Kaiser records "d[id] not show a reasonable probability
that it would change the outcome of the decision," and the
Appeals Council ruled that Dr. Hoshide's letter was irrelevant
to the period at issue in the ALJ's Decision.  [AC Notice, AR at
2 (dkt. no. 5-3 at PageID.18).]

　　　　As previously noted, the Appeals Council denied
Plaintiff's request for review.  This rendered the ALJ's
Decision the Commissioner's final decision.  [AC Notice, AR at 1
(dkt. no. 5-3 at PageID.17).]

　　　　In the instant Appeal, Plaintiff argues the Decision
should be reversed because: the ALJ improperly rejected
Plaintiff's testimony; the ALJ improperly rejected all of the
medical opinions; the ALJ improperly rejected Dr. Pang's opinion
regarding the precautions needed because of Plaintiff's
seizures.  Further, the Appeals Council failed to properly
consider Dr. Hoshide's opinion.  Plaintiff argues these errors

14

were not harmless, and he asks this Court to reverse the ALJ's Decision and remand the case.  [Opening Brief at 1.]

### STANDARDS

"A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security."  Concannon v. Saul, Civ. No. 19-00267-ACK-RT, 2020 WL 1492623, at *2 (D. Hawai`i Mar. 27, 2020), *aff'd*, No. 20-15732, 2021 WL 2941767 (9th Cir. July 13, 2021).

### I.   Review of Social Security Decisions

"A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security."  Id.

The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal.  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).  Thus, in reviewing the Commissioner's decision, this Court applies the same standards that the Ninth Circuit applies.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error.  Id.  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted).  In

15

reviewing a decision by the Commissioner, a district court must consider the entire record as a whole.  Id.  Where the record, considered as a whole, could support either affirmance or reversal, the district court must affirm the decision.  Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016).  To ensure a court does not substitute its judgment for the ALJ's, it must "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'"  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (quoting Treichler, 775 F.3d at 1098).

## II.   **Five-Step Analysis**

The following analysis applies in cases involving review of the denial of social security disability benefits.

> To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation.  See 20 C.F.R. § 404.1520.  The burden of proof is on the claimant at steps one through four.  See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities," Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (citing §§ 404.1571–404.1572, 416.971–416.975). At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," § 404.1520(a)(4)(ii), meaning that it significantly limits the claimant's "physical or mental ability to do

16

basic work activities," § 404.1522(a); see Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

At step three, the ALJ evaluates whether the claimant has an impairment, or combination of impairments, that meets or equals the criteria of any of the impairments listed in the "Listing of Impairments" (referred to as the "listings"). See § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1 (pt. A). The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (footnote omitted).[7] If an impairment does not meet a listing, it may nevertheless be "medically equivalent to a listed impairment" if the claimant's "symptoms, signs, and laboratory findings are at least equal in severity to" those of a listed impairment. § 404.1529(d)(3). But a claimant cannot base a claim of equivalence on symptoms alone. Even if the claimant alleges pain or other symptoms that makes the impairment more severe, the claimant's impairment does not medically equal a listed impairment unless the claimant has signs and laboratory findings that are equal in severity to those set forth in a listing. § 404.1529(d)(3). If a claimant's impairments meet or equal the criteria of a listing, the claimant is considered disabled. § 404.1520(d).

If the claimant does not meet or equal a listing, the ALJ proceeds to step four, where the

---

[7] Sullivan has been superseded by statute on other grounds. See, e.g., Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013).

ALJ assesses the claimant's residual functional
capacity (RFC) to determine whether the claimant
can perform past relevant work, § 404.1520(e),
which is defined as "work that [the claimant has]
done within the past 15 years, that was
substantial gainful activity, and that lasted
long enough for [the claimant] to learn to do
it," § 404.1560(b)(1).  If the ALJ determines,
based on the RFC, that the claimant can perform
past relevant work, the claimant is not disabled.
§ 404.1520(f).

At step five, the burden shifts to the
agency to prove that "the claimant can perform a
significant number of other jobs in the national
economy." Thomas v. Barnhart, 278 F.3d 947, 955
(9th Cir. 2002).  To meet this burden, the ALJ
may rely on the Medical-Vocational Guidelines
found at 20 C.F.R. Pt. 404 Subpt. P, App. 2,4 or
on the testimony of a vocational expert.  Tackett
v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).
"[A] vocational expert or specialist may offer
expert opinion testimony in response to a
hypothetical question about whether a person with
the physical and mental limitations imposed by
the claimant's medical impairment(s) can meet the
demands of the claimant's previous work, either
as the claimant actually performed it or as
generally performed in the national economy."
§ 404.1560(b)(2).  An ALJ may also use "other
resources, such as the 'Dictionary of
Occupational Titles' and its companion volumes
and supplements, published by the Department of
Labor." Id.

Throughout the five-step evaluation, the ALJ
"is responsible for determining credibility,
resolving conflicts in medical testimony, and for
resolving ambiguities." Andrews v. Shalala, 53
F.3d 1035, 1039 (9th Cir. 1995).

Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020) (some

alterations in Ford) (footnotes omitted).

## DISCUSSION

This Court finds the issue of whether the ALJ erred in finding that Plaintiff had the RFC to perform medium work dispositive of the instant Appeal.  See Decision, AR at 25 (dkt. no. 5-3 at PageID.41) (citing 20 CFR 404.1567(c) and 416.967(c)).  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  Thus, this Court will consider the issues raised in the Appeal while focusing upon the effect that each issue has on the question of whether Plaintiff is capable of performing medium work.

## I.   Whether It Was Error to Reject Plaintiff's Testimony

Plaintiff testified that his welder/pipe fitter job required him to lift more than fifty pounds, and he "was in fit condition at that time."  [Hrg. Trans., AR at 45 (dkt. no. 5-3 at PageID.61).]  However, he stopped working at that job in 2012.  See Exh. 7D (Summary FICA Earnings for Years Requested), AR at 250 (dkt. no. 5-6 at PageID.269); Exh. 8D (Detail Covered FICA Earnings and Employer Name and Address for Years Requested), at AR at 251-52 (dkt. no. 5-6 at PageID.270-71).  When asked to estimate what amount of weight he could comfortably lift and carry, Plaintiff estimated "20, 25 pounds." [Hrg. Trans., AR at 53 (dkt. no. 5-3 at PageID.69).]  The ALJ noted this testimony in the Decision.  See Decision, AR at 26

19

(dkt. no. 5-3 at PageID.42).  Plaintiff's estimate was based on
his attempts to exercise because he found that he could "only
pick up one 20-pound dumbbells.  Too much weight.  Too heavy."
[Hrg. Trans., AR at 53 (dkt. no. 5-3 at PageID.69).]  He also
explained, "[t]hat's too heavy, but you know, you put extra
weight on the hand, the bone come funny time."  [Id.]

> The Ninth Circuit has stated:
>
>> To discredit a claimant's symptom testimony when
>> the claimant has provided objective medical
>> evidence of the impairments which might
>> reasonably produce the symptoms or pain alleged
>> and there is no evidence of malingering, the ALJ
>> must give specific, clear, and convincing reasons
>> for rejecting the testimony by identifying which
>> testimony the ALJ found not credible and
>> explaining which evidence contradicted that
>> testimony.

Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017)
(brackets, citation, and internal quotation marks omitted).
Further, those reasons must be supported by substantial
evidence.  Marsh v. Colvin, 792 F.3d 1170, 1174 n.2 (9th Cir.
2015).  As previously noted, the ALJ found that Plaintiff's
impairments could reasonably be expected to cause the symptoms
he described, but the record did not support his testimony about
the extent of his symptoms.  [Decision, AR at 26 (dkt. no. 5-3
at PageID.42).]  Because the ALJ did not make a finding that
Plaintiff was malingering, the ALJ was required to identify
specific, clear, and convincing reasons, supported by

substantial evidence, why certain portions of Plaintiff's
testimony were not credible.

        The ALJ did not specifically address the credibility
of Plaintiff's testimony that he could only lift and carry up to
twenty to twenty-five pounds.  In fact, the ALJ appeared to rely
on this testimony in concluding that Plaintiff's statements
about the limitations on his ability to walk, his pain levels,
and the frequency of his seizures were "not entirely consistent
with the medical evidence and other evidence in the record."
See Decision, AR at 26 (dkt. no. 5-3 at PageID.42).  The ALJ
found that Plaintiff's

            statements about the intensity, persistence, and
            limiting effects of his . . . symptoms . . .
            [were] inconsistent because despite [Plaintiff's]
            reported difficulty walking, driving, hip and
            ankle pain, and frequency of seizures; **he also
            testified he can lift 20-25 pounds,** walk about
            half an hour to one hour before he starts walking
            slow, and has to rest for only five minutes
            before he can continue walking.

[Id. (emphasis added).]  The ALJ also noted that Plaintiff takes
care of his family's home, drives occasionally to go to doctor's
appointments or to take his son to school, and he "worked at
near substantial gainful activity levels in 2019 and 2020."
[Id.]  However, none of these activities indicate that
Plaintiff's testimony that he can only lift and carry up to
twenty to twenty-five pounds was not credible, nor do these

                                21

activities indicate that Plaintiff is able to lift and carry up to fifty pounds in a work setting.

As to the medical evidence supporting the rejection of Plaintiff's subjective testimony, the ALJ cited a number of medical records, but the only one the ALJ cited that mentions Plaintiff's strength is a record of

> September 2019 treatment notes [which] showed right hip tenderness to palpation anteriorly over buttock and greater trochanter, but full range of motion, full 5/5 strength, and normal sensation in the right lower extremity; the claimant was assessed with right hip joint pain, with suspected bursitis from extensive walking, addressed with exercises, stretches, and self reference to physical therapy (2F/2-3).

[Id.]  Exhibit 2F, pages 2 through 4 are the notes by Chantelle M. Castro, M.A., and Erin L. Hunt, M.D., for Plaintiff's September 28, 2019 visit to the Kaiser Moanalua Clinic.  [Exh. 2F (Kaiser HIT Report) at 2-4, AR at 403-05 (dkt. no. 5-8 at PageID.424-26).]  Dr. Hunt noted that Plaintiff presented "for right hip pain that started after starting his job as a janitor at Mililani shopping center.  Sometimes feels like hip is going to give out on hip.  No numbness tingling or weakness.  Has some right low back pain and buttock pain."  [Id. at 404 (dkt. no. 5-8 at PageID.425).]  Dr. Hunt made the "5/5 strength" remark in the notes regarding Plaintiff's musculoskeletal examination during that visit.  See id.

A 5/5 strength rating is often described as "normal" or "full" strength.  See, e.g., Clark v. Kijakazi, No. 2:22-cv-01336 AC, 2023 WL 6049890, at *5 (E.D. Cal. Sept. 15, 2023); Javier v. Kijakazi, Civ. No. 21-00191 HG-WRP, 2022 WL 3275674, at *4 (D. Hawai`i Aug. 11, 2022); Jason B. v. Comm'r of Soc. Sec., CASE NO. C21-372-BAT, 2021 WL 3486718, at *3 (W.D. Wash. Aug. 9, 2021).  However, there is no indication in either the record of this case or the applicable case law that "normal" or "full" strength means capable of lifting and carrying up to fifty pounds.  Plaintiff was capable of lifting and carrying fifty pounds when he worked as a welder/pipe fitter, but he was in better physical condition at that time, and he had not worked that job for seven years before his alleged onset date.  See Hrg. Trans, AR at 45 (dkt. no. 5-3 at PageID.61); Exh. 7D, AR at 250 (dkt. no. 5-6 at PageID.269); Exh. 8D, at AR at 251-52 (dkt. no. 5-6 at PageID.270-71).

Case law supports the use of a 5/5 strength rating to discount a social security claimant's testimony, but only in cases where the claimants asserted limitations that were more extensive than being unable to lift fifty pounds.  For example, in Cecilia H.R. v. Kijakazi, the claimant asserted "she couldn't carry the trash because it was 'too heavy' and that she sat on a chair in the shower and took breaks when she cooked because her legs and feet were 'too weak.[.]'"  Case No. CV 20-7836-JPR,

23

2022 WL 21320594, at *6 (C.D. Cal. Dec. 7, 2022) (citations omitted).  In ruling that the ALJ did not err in discounting the claimant's testimony, the district court noted that these statements "were inconsistent with examination findings of 'normal muscle tone and bulk without atrophy' and '5/5' strength 'throughout, without focal motor deficits[.]'"  Id. (some citations omitted) (citing Anne T. v. Kijakazi, No. 1:20-CV-3080-FVS, 2021 WL 4346228, at *8 (E.D. Wash. July 30, 2021)).

Because neither the 5/5 strength rating nor Plaintiff's activities indicate that he has the ability to lift and carry more than twenty-five pounds, this Court finds that the ALJ failed to provide specific, clear, and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's testimony that he was unable to lift or carry more than twenty or twenty-five pounds.

## II.  Failure to Consider Medical Opinions

On June 25, 2021, Dr. Pang opined that Plaintiff was capable of lifting and carrying ten pounds occasionally and twenty pounds rarely.  [Exh. 8F (Pang Statement) at 3, AR at 497 (dkt. no. 5-8 at PageID.518).]  The ALJ found that Dr. Pang's opinions were

> not persuasive since the limitations are not well
> supported by specific objective findings during
> the period at issue; instead, Dr. Pang references
> a remote May 1, 2012 brain MRI showing extensive
> left posterior hemispheric encephalomalacia with

24

volume loss (1F/6).  Additionally, Dr. Pang's
limitations are not consistent with the test
results and exam findings during the period,
including February 2019 treatment notes showing
the last seizure was the year prior, and on exam,
normal extremities, no lower extremity edema
bilaterally, neurologically grossly intact, no
focal motor or sensory findings, appropriate
affect, and alert and oriented times three
(2F/5); July 2019 exam findings showed the
claimant was well developed and nourished, no
bruits, and normal cardiovascular, pulmonary,
abdominal, and musculoskeletal exam findings,
with no edema (3F/5; 5F/20);[8] and September 2019
treatment notes showing full range of motion,
full 5/5 strength, and normal sensation in the
right lower extremity (2F/2-3).

[Decision, AR at 28-29 (dkt. no. 5-3 at PageID.44-45).]

20 C.F.R. § 404.1520c, which governs claims filed on

or after March 27, 2017, states the Social Security

Administration

will not defer or give any specific evidentiary
weight, including controlling weight, to any
medical opinion(s) or prior administrative
medical finding(s), including those from your
medical sources.  When a medical source provides
one or more medical opinions or prior
administrative medical findings, we will consider
those medical opinions or prior administrative

---

8 Exhibit 3F is the Health Information Technology (HIT)
Medical Report from Straub Medical Center ("Straub") requested
for the period from February 27, 2018 to January 24, 2020
("Straub HIT Report").  [AR at 420-48 (dkt. no. 5-8 at
PageID.441-69).]  Pages 4 through 7 of Exhibit 3F are the
Progress Notes by Andrew W.Y. Dang, M.D., for Plaintiff's July
15, 2019 visit.  [AR at 423-26 (dkt. no. 5-8 at PageID.444-47).]
    Exhibit 5F is the office treatment records for the Straub
Clinic and Hospital in Honolulu.  [AR at 451-85 (dkt. no. 5-8 at
PageID.472-506).]  Pages 19 through 23 of Exhibit 5F are the
Progress Notes by Dr. Dang for Plaintiff's July 15, 2019 visit.
[AR at 469-73 (dkt. no. 5-8 at PageID.490-94).]

> medical findings from that medical source
> together using the factors listed in paragraphs
> (c)(1) through (c)(5) of this section, as
> appropriate.  The most important factors we
> consider when we evaluate the persuasiveness of
> medical opinions and prior administrative medical
> findings are supportability (paragraph (c)(1) of
> this section) and consistency (paragraph (c)(2)
> of this section)).

20 C.F.R. § 404.1520c(a).

As to supportability, § 404.1520c(c)(1) states: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  The Pang Statement does not cite any medical records or evidence to support Dr. Pang's opinions that Plaintiff could never lift or carry a maximum of fifty pounds and that Plaintiff could only rarely lift or carry a maximum of twenty pounds.  See Exh. 8F, AR at 498 (dkt. no. 5-8 at PageID.519).  Further, although Dr. Pang treated Plaintiff in August 2020, December 2020, and June 2021, see id. at 497 (dkt. no. 5-8 at PageID.518), there is no medical record from any of those visits within the administrative record.  According to the Pang Statement, Dr. Pang is part of the Kaiser Permanente Medical Center.  See id. at 500 (dkt. no. 5-8 at PageID.521). Exhibit 2F, the Kaiser HIT Report, only responds to a request for records from February 27, 2018 to the date of the report's creation, January 24, 2020.  See AR at 402 (dkt. no. 5-8 at

26

PageID.423) (specifying dates); see generally Exh. 2F, AR at

402-19 (dkt. no. 5-8 at PageID.423-40).[9]   Therefore, the ALJ did

not err in finding that Dr. Pang's opinions about Plaintiff's

ability to lift and carry were not well-supported.

As to consistency, § 404.1520c(c)(2) states: "The more

consistent a medical opinion(s) . . . is with the evidence from

other medical sources and nonmedical sources in the claim, the

more persuasive the medical opinion(s) . . . will be."   The

medical evidence that the ALJ cited as inconsistent with

Dr. Pang's opinions include the "5/5 strength" observation by

Dr. Hunt, discussed *supra* Section I, and other similar

observations.   See Exh. 2F (Kaiser HIT Report) at 3, AR at 404

(dkt. no. 5-8 at PageID.425) (Dr. Hunt's 9/28/19 Progress

Notes); see also Exh. 1F (Queen's HIT Report) at 6, AR at 391

(dkt. no. 5-8 at PageID.412) (part of Dr. Wong's 9/4/18 Progress

Notes stating: "Motor: R deltoid 4/5, R elbow flexion/extension

5/5, R grip strength 5-/5 (subtle asymmetry; he is left-handed),

otherwise 5/5 throughout on L and in RLE also."); Exh. 2F at 5,

AR at 406 (dkt. no. 5-8 at PageID.427) (Dr. Hiles's 2/11/19

Progress Notes stating, "extremities are normal").   As noted in

the context of the Plaintiff's testimony, there is no indication

_____

[9] Even the additional Kaiser records that were presented to
the Appeals Council do not include records from Dr. Pang's
treatment of Plaintiff.   See AR at 63-96 (dkt. no. 5-3 at
PageID.79-112).

whether a normal finding constitutes a finding that Plaintiff is capable of lifting and carrying a maximum of fifty pounds.  The ALJ therefore erred in the consistency analysis of Dr. Pang's opinions regarding Plaintiff's ability to lift and carry.

However, because the ALJ did not err in the supportability analysis of Dr. Pang's opinions regarding Plaintiff's ability to lift and carry, the ALJ did not err in concluding that Dr. Pang's opinions were not persuasive. Plaintiff's Appeal is denied as to the argument that the ALJ failed to give proper consideration to Dr. Pang's opinions regarding Plaintiff's ability to lift and carry.

III. **Whether the Error Was Harmless**

This Court has concluded that the ALJ erred by rejecting Plaintiff's subjective testimony that he unable to lift and carry more than twenty or twenty-five pounds.  The ALJ included the ability to do medium work in Plaintiff's RFC.  See Decision, AR at 25 (dkt. no. 5-3 at PageID.41).  If the ALJ, after a proper credibility assessment, had accepted Plaintiff's testimony that he can only lift and carry up to twenty or twenty-five pounds, the ALJ would have been required to find that Plaintiff was unable to do medium work.  See 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time . . . .").  Plaintiff would therefore be unable to perform the three occupations cited in the Decision, all of

28

which are classified as medium work.  See Decision, AR at 30-31
(dkt. no. 5-3 at PageID.46-47).  The VE testified a hypothetical
worker, with the limitations included in Plaintiff's RFC, who
could only perform light work, would be able to perform three
unskilled jobs - marker, mail clerk, and information clerk.  See
Hrg. Trans., AR at 59-61 (dkt. no. 5-3 at PageID.75-77).

> However, the Medical-Vocational Guidelines state:
>
>> for individuals of advanced age who can no longer
>> perform vocationally relevant past work and who
>> have a history of unskilled work experience, or
>> **who have only skills that are not readily
>> transferable to a significant range of semi-
>> skilled or skilled work that is within the
>> individual's functional capacity,** or who have no
>> work experience, the limitations in vocational
>> adaptability represented by functional
>> restriction to light work warrant a finding of
>> disabled.  Ordinarily, even a high school
>> education or more which was completed in the
>> remote past will have little positive impact on
>> effecting a vocational adjustment unless relevant
>> work experience reflects use of such education.

20 C.F.R. Pt. 404, Subpt. P, App. 2 at § 202.00(c) (emphasis
added).  At the time of the hearing before the ALJ, Plaintiff
was an individual of advanced age who could no longer perform
his prior relevant work.  See Decision, AR at 29-30 (dkt.
no. 5-3 at PageID.45-46).  Thus, if the ALJ found that Plaintiff
was limited to light work, a finding of "disabled" would have
been required if Plaintiff's skills were "not readily
transferable to a significant range of semi-skilled or skilled
work" within his RFC.  See § 202.00(c).

29

The ALJ did not address the issue of transferable skills because the ALJ concluded that "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."  See Decision, AR at 30 (dkt. no. 5-3 at PageID.46) (citing SSR 82-41; 20 CFR Part 404, Subpart P, Appendix 2).  While that may have been true based on a finding that Plaintiff was capable of medium work, the transferable skills analysis would have been necessary if, after proper consideration of Plaintiff's testimony, the ALJ found that Plaintiff was only capable of light work.  This Court therefore finds that that the ALJ's error in failing to give proper consideration to Plaintiff's testimony about the amount of weight that he could lift and carry was not harmless.  See Treichler, 775 F.3d at 1099 ("An error is harmless if it is 'inconsequential to the ultimate nondisability determination.'" (quoting Alaska Dep't of Envtl. Conserv. v. EPA, 540 U.S. 461, 497, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004))).

In light of this Court's rulings, the ALJ's ultimate ruling that Plaintiff was not disabled was not supported by substantial evidence.  To the extent that Plaintiff's Appeal raises arguments which are not specifically addressed in this Order, it is not necessary for this Court to reach those arguments.  This Court makes no findings or conclusions

regarding those arguments.  Plaintiff's Appeal is granted insofar as the ALJ's Decision, including the ruling that Plaintiff is not disabled, is reversed.  The case is remanded to the ALJ for further proceedings consistent with this Order.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's appeal from the Administrative Law Judge's July 28, 2021 Decision is HEREBY GRANTED IN PART AND DENIED IN PART.  The Appeal is GRANTED, insofar as the ALJ's Decision is REVERSED as to the ALJ's rejection of Plaintiff's subjective testimony about the amount of weight Plaintiff is able to lift and carry.  The Appeal is DENIED as to Plaintiff's argument asserting error in the ALJ's consideration of Dr. Pang's opinions about Plaintiff's ability to lift and carry.  This case is REMANDED to the ALJ for further proceedings consistent with the instant Order.

There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close on **December 13, 2023,** unless a timely motion for reconsideration of the instant Order is filed.

IT IS SO ORDERED.

31

DATED AT HONOULU, HAWAII, November 28, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

BENJAMIN PANONCILLO VS. KILOLO KIJAKAZI, ACTING COMMISSIONER OF
SOCIAL SECURITY; CV 23-00120 LEK-WRP; ORDER:  GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S APPEAL; REVERSING THE
ADMINISTRATIVE LAW JUDGE'S DECISION; AND REMANDING THE CASE FOR
FURTHER PROCEEDINGS